THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

SHORELIGHT, LLC
Two Seaport Lane, Suite 500
Boston, MA 02210

   *Plaintiff*,

UNITED STATES
DEPARTMENT OF STATE
2201 C St. NW
Washington, D.C. 20520

   *Defendant*.

Case No.

**Complaint for Injunctive Relief Under the Freedom of Information Act**

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. Plaintiff Shorelight, LLC ("Shorelight") brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against Defendant, U.S. Department of State ("DOS" or "State Department") to compel Defendant to produce documents and data in compliance with FOIA.

2. On August 1, 2024, Plaintiff submitted an Expedited FOIA request (FOIA Case Number F-2023-17064) to DOS requesting F-1 Nonimmigrant Visa Refusal Statistics by Post and Nationality for Fiscal Year 2023 and for FY 2024. *See* **Exhibit A**, FOIA Request to State Department (dated August 1, 2024).

3. On August 13, 2024, the State Department acknowledged receipt of Plaintiff's FOIA request and denied Plaintiff's request for expedited processing, stating that Plaintiff failed to "demonstrate a 'compelling need' for the requested information." *See* **Exhibit B,** Ref: F-2024-17064, Freedom of Information Act Acknowledgement and Response from State Department

(dated August 13, 2024).

4. On August 13, 2024, Plaintiff submitted a FOIA Appeal of the State Department's denial of their Request for Expeditious Handling. *See* **Exhibit C,** FOIA Appeal to State Department (dated August 13, 2024). In this FOIA Appeal, Plaintiff provided a detailed explanation of the compelling needs which justify expeditious processing of Plaintiff's FOIA request. *Id.*

5. On August 14, 2024, the State Department responded to Plaintiff's Appeal and upheld its decision to deny expedited processing of Plaintiff's August 1, 2024 FOIA request. *See* **Exhibit D**, Ref: A-2024-00548, Freedom of Information Act Appeal Response from State Department (dated August 14, 2024).

6. Then, on August 28, 2024, the State Department further responded to Plaintiff's Appeal and stated that "[t]his Office assigned your request the subject reference number and placed it in the **expedited** processing track where it will be processed as soon as practicable." S*ee* **Exhibit E**, Ref: A-2024-00548, Freedom of Information Act Appeal Response from State Department (dated August 28, 2024).

7. To date, Plaintiff's FOIA request remains pending.

8. The information requested is a topic of significant public importance that has raised substantial questions about whether the United States is refusing a significantly higher percentage of student visa applications in certain countries than in past years. *See*, e.g., VOA News, *Student Visa Denials Are Rising, and African and South American Applicants Bear the Brunt* (Sep. 7, 2023) (*available at* https://www.voanews.com/a/student-visa-denials-are-rising-and-african-and-south-american-applicants-bear-the-brunt-/7213473.html); Emi Tuyetnhi Tran, *African and South American college students face high hurdles to study in the U.S.* NBC News (July 28, 2023)

(*available at* https://www.nbcnews.com/news/nbcblk/african-south-american-students-face-high-f-1-visa-denial-rates-rcna96685).

9.      Additionally, access to this requested information increases Shorelight's ability to accurately advise universities, students, and other interested stakeholders on the likelihood of international student visa outcomes—outcomes that have a far-reaching impact on many more individuals and entities than just the individual F-1 student. The Brookings Institution explained:

> The Trump administration had instilled a significant degree of unpredictability for international students and their schools . . . lower interest from international students during the Trump administration raised concerns for schools and employers in the U.S., as the decline of international student enrollment cost the United States nearly $12 billion and over 65,000 jobs since 2016, in addition to losing out on other benefits of having international students in U.S. schools.

Dan Berger, *et al. Report: [Four] Ways the Biden Administration Can Improve the Employment-Based Immigration System Without Congress*, Brookings.edu (Jan. 28, 2021) *available at* https://www.brookings.edu/research/4-ways-the-biden-administration-can-improve-the-employment-based-immigration-system-without-congress/.

10.     Ensuring this information be made publicly available and easily accessible is a priority for the Biden Administration. *See e.g.* U.S. Department of Justice Press Release, *Attorney General Merrik B. Garland Issues New FOIA Guidelines to Favor Disclosure and Transparency* (March 15, 2022), https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-issues-new-foia-guidelines-favor-disclosure-and ("the Attorney General's FOIA guidelines direct federal departments and agencies to continue efforts to remove barriers to requesting and accessing government records and to reduce FOIA processing backlogs.").

11.     Further, the National Origin-Based Antidiscrimination for Nonimmigrants Act ("NO BAN Act"), which was passed by the U.S. House of Representatives on April 21, 2021, also

evidences this priority. If enacted, the NO BAN Act would mandate the U.S. Secretary of State formally report the number of foreign applicants whose U.S. visas were approved, are still pending, or were denied, per reporting period. *See* National Origin-Based Antidiscrimination for Nonimmigrants Act, NO BAN Act, H.R. 1333, 117th Cong. § 4 (2021), *available at* https://www.congress.gov/bill/117th-congress/house-bill/1333/text (no action taken in the Senate as of April 22, 2021). The bill also proscribes that this data be further broken down by visa category and applicant country of origin. *Id*.

12. Although critical for the nation's future, its enactment is tenuous at this stage. Therefore, time is of the essence for Shorelight, as schools across the country need to prepare for the 2025 academic year, for which the academic application and admission process (and the student visa appointments process) is nearly complete at the vast majority of U.S. colleges and universities. *See, e.g.*, Intelligence Unit, *2024 Global Student Flows – US Outlook and Forecast Update*, Holon IQ, (May 23, 2024), [https://www.holoniq.com/notes/2024-global-student-flows---us-outlook-and-forecast-update](https://www.holoniq.com/notes/2024-global-student-flows---us-outlook-and-forecast-update) (last visited August 25, 2024) (the article's conclusion underscores Plaintiff's argument: "the U.S. has upside potential for an additional 300K students [by 2030]. However, capacity constraints and the potential for a change in visa policy, cast a shadow over what should represent nearly **100 billion dollars in direct economic benefit for the United States** at the turn of the decade.").

13. Finally, universities across the United States require this information quickly so that they may better understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing schools from wasting millions of dollars to recruit students from areas where they are statistically less likely to obtain visas. *See* e.g.,

4

Samba Dieng, *Student Visa Denials Threaten U.S. Competitiveness*, InsideHigherEd.com (May 20, 2024) *available at* https://www.insidehighered.com/opinion/views/2024/05/20/states-have-compelling-interest-visa-policy-opinion (last visited August 26, 2024).

14. Plaintiff's FOIA request is entitled to expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I). *See also* 22 C.F.R. § 171.11(f)(2) and (3).

15. DOS has unlawfully withheld this information from Shorelight despite its right to expedited processing of FOIA request F-2024-17064 (Appeal ref: A-2024-00548). *See* **Exhibits D**, **E.** Plaintiff therefore respectfully requests that the Court compel the U.S. Department of State to process its FOIA request seeking non-immigrant F-1 student visa refusal statistics by post and nationality for Fiscal Years 2023 through 2024 on an expedited basis. Indeed, these statistics are already in DOS's possession and are readily available to be released with very little effort or resource expenditure on the part of the U.S. Department of State.

16. Moreover, Plaintiff prevailed before this Court on virtually the same set of facts in 2019 (Civil Action Number 19-cv-00282); 2021 (Civil Action Number 21-cv-01490); 2022 (Civil Action Number 22-cv-02878); and in 2023 (Civil Action Number 23-cv-03096) requesting the same data from the State Department for the same purpose as before. *See* **Exhibit A**, DOS Response to FOIA Request, Case No. F-2018-06587 (dated April 8, 2019); DOS Response to FOIA Request, Case Nos. F-2021-02037/FL-2021-00491 (dated July 26, 2021); DOS Response to FOIA Request, Case Nos. F-2022-11858/FL-2023-00008 (dated November 22, 2022); DOS Response to FOIA Request, Case Nos. F-2023-14291/FL-2024-00005 (dated January 9, 2024).

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this action pursuant to the FOIA statute, 5 U.S.C. § 552(a)(4)(B) ("[o]n complaint, the district court of the United States in the district in which the

complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant[]") and the federal question jurisdiction statute, 28 U.S.C. § 1331.

18. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency. *See* supra ¶ 9.

## PARTIES

19. Plaintiff Shorelight, LLC is a limited liability corporation incorporated under the laws of Delaware and based in Boston, Massachusetts. Shorelight exclusively partners with universities that place a high value on reaching out to top students across the globe and growing their international student body. *See* Shorelight Home Page, *https://shorelight.com/universities/* (last visited August 22, 2022); *see also* Jim Morrison, *5 Minutes With . . . Tom Dretler of Shorelight*, Boston Business Journal (Aug. 20, 2020), *available at* https://www.bizjournals.com/boston/news/2020/08/20/5-minutes-with-tom-dretler-of-shorelight.html. Shorelight currently works with 98 U.S. universities—such as: Adelphi University, The American Musical and Dramatic Academy, American University, Auburn University, Auburn University at Montgomery, Austin College, Barton College, Belmont University, Bethel College, Blackburn College, Carroll University, Cleveland State University, Gonzaga University, Florida International University, Louisiana State University, University of South Carolina, University of Massachusetts at Boston, University of Massachusetts Amherst, University of Central Florida, University of Dayton, University of Illinois at Chicago, University of Kansas, University of Mississippi, University of the Pacific, University of Utah, University of California – Berkley, American Collegiate LA (UCLA's continuing education/extension school),

American Collegiate DC (American University's continuing education/extension school), American Collegiate Live (Shorelight's remote learning institution designed for international students), and University of California at Berkeley—to provide innovative options for foreign students seeking next generation higher education. *See* Shorelight "Partner Universities" Page, https://shorelight.com/universities/ (last visited on August 27, 2024).

20. Shorelight provides an array of services to its partner universities, including: designing, implementing, and managing international student programs on site of the university's home campus and at venues around the world; face-to-face student concierge services (including admissions application assistance, dormitory room set up, personalized campus and community orientation for the student and his or her family, and visa application and interview guidance); enrollment management expertise; localized marketing; and—most importantly for this case—regulatory information guidance. *See* Shorelight's "Services" Webpages for Students and Universities, shorelight.com (last visited August 27, 2024).

21. A significant aspect of Shorelight's business operations includes its ability to keep its universities, students, and other stakeholders apprised of the latest, ever-changing immigration-related federal regulations by disseminating this information. Therefore, having access to more specific student visa approval/denial statistics is critical in order for Shorelight to inform members of Congress, the media, the universities with which it works, potential future university collaborators, prospective students, and the general public about government policies and practices affecting international students and U.S. universities.

22. Moreover, Shorelight has a substantial due process interest in obtaining this data. Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process in order to make multi-million dollar decisions

about which international students to invest in and recruit from around the world. This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars in the recruitment of students from areas where they are unlikely to obtain visas.

23. Defendant, the U.S. Department of State, is a federal agency within the meaning of FOIA (*see* 5 U.S.C. § 552(f)(1)) and headquartered in Washington, D.C. Defendant has possession, custody, and control of the records and data to which Plaintiff seeks access.

## STATEMENT OF FACTS

24. Generally, a citizen of a foreign country who wishes to enter the United States to study must first obtain a student visa in order to legally study in the United States. A student seeking to study at a college, university, or a language training program must obtain what is known as an "F-1" visa, which is named after the section of the Immigration and Nationality Act authorizing the issuance of student visas. *See* 8 U.S.C. § 1101(a)(15)(F)(i).

25. In order for a foreign student to obtain a visa to study in the United States, they must apply to, and be accepted by, a school approved by the U.S. Department of Homeland Security to accept foreign students. After the DHS-approved school accepts the student's enrollment, the school issues the student a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status. *See Student Visa Overview*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited August 22, 2024); *see also Students and the Form I-20*, U.S. Dep't of Homeland Security, Study in the States, *available at* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited August 22, 2023).

26. After the student receives a Form I-20, the student may then apply at a U.S. Embassy or Consulate for an F-1 student visa. At the visa interview, a consular officer interviews the student to determine whether the student should be granted a visa to study in the United States.

27. The U.S. Department of State recently changed its methodology for calculating its non-immigrant visa data beginning in the Fiscal Year (FY) 2019 annual Report of the Visa Office and continuing with FY 2020 data, to reflect the greater access to application-level data attained during FY 2019. Per the U.S. Department of State's Bureau of Consular Affairs, this new methodology more accurately reflects final outcomes from the visa application process during a specified reporting period. The new methodology follows visa applications, including updates to their status (i.e., issued or refused), which could change as the fiscal year progresses, or result in slight changes in data for earlier years. *See Visa Data Reporting: Updating the Methodology*, available at https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2019AnnualReport/Visa_counts_methods_differences_vF.pdf (last visited August 22, 2024); *see also Monthly Nonimmigrant Visa Issuance Statistics*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html (last visited August 22, 2024).

28. The U.S. Department of State already reports, on a monthly basis, the sum-total number of F-1 student visas "issued" by post and nationality as a result of these interviews. *See* Report of the Visa Office, *Monthly Nonimmigrant Visa Issuances Statistics*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-

9

statistics/monthly-nonimmigrant-visa-issuances.html (last visited August 22, 2024).

29. The U.S. Department of State also reports on the Nonimmigrant Visa Issuances, including the number of F-1 student visas **issued**, by **post** and **nationality**. *See* Nonimmigrant Visa Issuances by Nationality June 2024 (FY 2024) U.S. Department of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/MonthlyNIVIssuances/JUNE%202024%20-%20NIV%20Issuances%20by%20Nationality%20and%20Visa%20Class.pdf (last visited August 22, 2024); *see also* Nonimmigrant Visa Issuances by Post June 2024 (FY 2024), U.S. Department of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/MonthlyNIVIssuances/JUNE%202024%20%20NIV%20Issuances%20by%20Post%20and%20Visa%20Class.pdf (last visited August 22, 2024).

30. In addition, the U.S. Department of State also currently reports the worldwide sum-total number of F-1 student visas "issued" and "refused" annually. *See* Report of the Visa Office, *Worldwide NIV Workload by Visa Category FY* 2023, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY2023%20NIVWorkloadbyVisaCategory.pdf (last visited August 22, 2024).

31. Despite issuing these datasets described above in paragraphs 27 and 28, the State Department does not publicly report the disaggregated "**refused**" data contained within the yearly document so that it can provide, and make publicly available, **by post and nationality**, the total number of F-1 student visas that were "**refused**" each month. In fact, the State Department *Report of the Visa Office 2023, Section XIX: Immigrant and Nonimmigrant Visa Ineligibilities (by Grounds for Refusal Under the Immigration and Nationality Act): Fiscal Year*

*2023*, is the **only** section of the annual report that does not make the data available. *See Report of the Visa Office, Monthly Nonimmigrant Visa Issuances Statistics*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2023AnnualReport/FY2023_AR_TableXIX.pdf (last visited August 22, 2024) (evidencing that 18 of the 19 sections of the Report of the Visa Office 2023 (Sections I-XVIII) provide at least one statistical table).

32. That is why, on August 1, 2024, Shorelight requested F-1 student visa non-immigrant **refusal** statistics **by post and nationality** for Fiscal Years 2023 through 2024 (year-to-date). *See* **Exhibit A**, FOIA Request to State Department (dated August 1, 2024).

33. Shorelight has requested this data because, based on the scope of its global operations and its firsthand knowledge of the student visa adjudication process, Shorelight has reason to believe that the visa refusal rate for F-1 student visas is significantly increasing in certain countries and at certain times of the year in comparison to other countries and other times of the year. *See e.g.*, Maina Waruru and Clemence Manyukwe, *Highest visa rejection – and approval – rates for Africans in one year,* University World News (July 25, 2024) *available at https://www.universityworldnews.com/post.php?story=20240716104622512* (last visited August 27, 2024).

34. Shorelight's request is not a remarkable, onerous, or resource-intensive request for the State Department to fulfill. Each year, the State Department publicly releases a document titled: "ADJUSTED REFUSAL RATE - B-VISAS ONLY BY NATIONALITY," which provides the exact same non-immigrant visa refusal rate for *visitor's visas* by nationality. *See Adjusted Refusal Rate - B-Visas Only By Nationality, Fiscal Year 2023*, U.S. Dep't of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/RefusalRates/FY23.pdf (last visited August 22, 2023).

11

35. Collecting and organizing the voluminous statistics for visitor's visas is far more time-consuming and resource-intensive than for student visas. In FY 2023, the State Department processed approximately *1,108 percent more* visitor visa applications than student visa applications. *See Worldwide NIV Workload by Visa Category FY* 2023, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY2023%20NIVWorkloadbyVisaCategory.pdf (last visited August 22, 2024) (evidencing the State Department processed a total of **7,745,109** B-1/B-2 visa applications and only **698,773** F-1 visa applications in FY 2023).

36. Further, the fact that the State Department's annual Report of the Visa Office 2023 includes a final Section XIX titled "Immigrant and Nonimmigrant Visa Ineligibilities (by Grounds for Refusal Under the Immigration and Nationality Act)" supports the fact that this data is already collected and organized in a manner ready for public use. *See supra* ¶ 29.

37. Finally, to be clear, Shorelight is only requesting data that is already in Defendant's immediate possession, and that simply disaggregates the numbers already contained and publicly reported in the "refused" column of the yearly statistics so that those numbers can be publicly available by post and nationality. Shorelight effectively seeks the exact same statistics, in the exact same format, already reported for visitor's visas, but for F-1 student visas instead. This information is necessarily readily and easily available as there is no way DOS can report the monthly and yearly statistics without also collecting the "refused" data by nationality and post. Moreover, U.S. Consulate officials have told Shorelight employees that this data is kept and is available to Consulate officials at each U.S. Embassy and Consulate.

*Shorelight's FOIA Request and Expedited Processing Request*

38. On August 1, 2024, Plaintiff submitted a FOIA request (FOIA Case Number F-2024-17064) to DOS requesting F-1 Nonimmigrant Visa Refusal Statistics by Post and Nationality for Fiscal Year 2023 and for FY 2024. *See* **Exhibit A**, FOIA Request to State Department (dated August 1, 2024).

39. On August 13, 2024, the State Department acknowledged receipt of Plaintiff's FOIA request and denied Plaintiff's request for expedited processing, stating that Plaintiff failed to "demonstrate a 'compelling need' for the requested information." *See* **Exhibit B,** Ref: F-2024-17064, Freedom of Information Act Acknowledgement and Response from State Department (dated August 13, 2024).

40. On August 13, 2024, Plaintiff submitted a FOIA Appeal of the State Department's denial of their Request for Expeditious Handling. *See* **Exhibit C,** FOIA Appeal to State Department (dated August 13, 2024). In this FOIA Appeal, Plaintiff provided a detailed explanation of the compelling needs which justify expeditious processing of Plaintiff's FOIA request. *Id.*

41. On August 14, 2024, the State Department responded to Plaintiff's Appeal and upheld its decision to deny expedited processing of Plaintiff's August 1, 2024 FOIA request. *See* **Exhibit D**, Ref: A-2024-00548, Freedom of Information Act Appeal Response and Denial from State Department (dated August 14, 2024).

42. Then, on August 28, 2024, the State Department further responded to Plaintiff's Appeal and stated that "[t]his Office assigned your request the subject reference number and placed it in the **expedited** processing track where it will be processed as soon as practicable." S*ee* **Exhibit E**, Ref: A-2024-00548, Freedom of Information Act Appeal Response from State Department

13

(dated August 28, 2024).

43.  To date, Plaintiff's FOIA request remains pending. *Id.*

*Entitlement to Expedited Processing*

44.  Shorelight sought expedited processing of the DOS FOIA request pursuant to 5 U.S.C § 552(a)(6)(E)(i)(I), as implemented by 22 C.F.R. § 171.11(f)(2) and (3). Expedited processing shall be provided "in cases in which the person requesting the records demonstrates a compelling need . . . ." 5 U.S.C. § 552(a)(6)(E)(i)(I). To be considered a "compelling need," the requestor must demonstrate one of the following situations exists: (1) an "imminent threat to the life or physical safety of an individual"; (2) the information requested is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity"; or (3) nondisclosure of the requested information would "impair substantial due process rights or harm substantial humanitarian interests." 5 U.S.C. § 552(a)(6)(E)(v)(II); 22 C.F.R. 171.11(f).

45.  Shorelight's State Department FOIA request is "made by a person primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5. U.S.C. § 552(a)(6)(E)(v)(II); *see also* 22 C.F.R. § 171.11(f)(2) and (3).

46.  In addition, failure to release the information would impair substantial due process rights or harm substantial humanitarian interests. *See* 22 C.F.R. § 171.11(f)(3). Shorelight has a substantial due process interest in obtaining this data because Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest in and recruit from around the world. This data is critical to preventing public schools

14

funded by U.S. taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas.

47. Further, there is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request. In fact, Shorelight is aware that members of the media have also requested this data.

48. Shorelight gathers information, exercises editorial discretion in selecting and organizing documents, and distributes the resulting work to members of Congress, members of the media, and public and private universities throughout the United States. Media outlets regularly publish the information Shorelight provides.

49. As Shorelight Education attempts to educate U.S. universities and members of Congress about the importance of the student visa system, Congressional members and staff consistently ask about whether the denial rate for student visas is increasing or decreasing. As this information is not currently publicly available, it is impossible to answer these questions without the information requested. *See* **Ex. F.**

50. The data that Shorelight seeks through the FOIA request is directly related to the integrity and viability of the student visa process—an issue which has been a primary focus of news coverage for the past several years.

51. The subject of Shorelight's FOIA request also raises questions about the government's integrity that affect public confidence. The Government often responds to media requests regarding reductions in issuances of student visas by citing reasons other than an increased refusal rate. This data is essential to uncovering whether an increased refusal rate is the main reason for reductions in the numbers of student visa issuances in certain countries.

*Exhaustion of Administrative Remedies*

52. Shorelight has exhausted its administrative remedies and seeks immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(E)(iii); *see also* **Exhibit B,** Ref: F-2024-17064, Freedom of Information Act Acknowledgement and Response from State Department (dated August 13, 2024); **Exhibit D**, Ref: A-2024-00548, Freedom of Information Act Appeal Response and Denial from State Department (dated August 14, 2024).

53. Moreover, Defendant's denial of Plaintiff's Appeal for their expedited FOIA request constitutes a final determination and Plaintiff is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(4).

## COUNT I

### Violation of FOIA, 5 U.S.C. § 552
### Agency's Wrongful Refusal to Engage in Expedited Processing of FOIA Request

54. Shorelight repeats the allegations in the forgoing paragraphs and incorporates them as though fully set forth therein.

55. Shorelight properly requested records within the possession, custody, and control of DOS on an expedited basis.

56. DOS is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.11(f)(2) and (3).

57. Shorelight has, as a core mission of its business, a practice of disseminating information to the public, the Congress, the media, universities, and students regarding the student visa process. There is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request, such that expedited processing is appropriate under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 22 C.F.R. § 171.11(f)(2) and (3).

58.     Shorelight also has a substantial due process interest in obtaining this data because it and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas. *See* 22 C.F.R. § 171.11(f)(2) and (3).

59.     DOS's refusal to provide expedited processing is counter to FOIA and DOS regulations. *See* 22 C.F.R. § 171.11(f)(2) and (3).

60.     Specifically, DOS's Appeal denial failed to comply with the controlling regulations, which state that the Department's denial must include the following content:

(1) The name and title or position of the person responsible for the denial;

(2) **A brief statement of the reasons for the denial, including any FOIA exemptions applied in denying the request**;

(3) **An estimate of the volume of any records or information withheld, such as the number of pages or some others reasonable form of estimation**, although such an estimate is not required if the volume is otherwise indicated by deletions marked on records that are disclosed in part or if providing an estimate would harm an interest protected by an applicable exemption;

(4) A statement that the denial may be appealed under § 171.15 and a description of the requirements set forth therein; and

(5) A statement notifying the requester of the assistance available from the Department's FOIA Public Liaison and the dispute resolution services offered by the Office of Government Information Services of the National Archives and Records Administration.

*See* 22 C.F.R. § 171.13(f).

61.     However, counter to the regulations, DOS's "explanation" for the denial of Plaintiff's expedited processing request constituted a single conclusory assertion that Plaintiff's "request and appeal do not meet the established criteria." *See* **Exhibit D**, Ref: A-2024-00548,

Freedom of Information Act Appeal Response and Denial from State Department (dated August 14, 2024). DOS thus utterly failed to provide any reasons for the denial (as required by the regulations) and instead makes a vague assertion that Plaintiff's request failed to "meet the established criteria" without providing any explanation of which criteria Plaintiff failed to meet and why. *See* **Exhibit D**, Ref: A-2024-00548, Freedom of Information Act Appeal Response and Denial from State Department (dated August 14, 2024).

62. Further, even considering the State Department's initial August 13, 2024 denial, the content of the Department's Appeal Denial still fails to meet the content requirements stipulated under the regulations. *See* 22 C.F.R. § 171.13(f); *see also*, **Exhibit B,** Ref: F-2024-17064, Freedom of Information Act Acknowledgement and Response from State Department (dated August 13, 2024). Indeed, in their initial denial, the only explanation DOS provided was that Plaintiff's request did not demonstrate "a compelling need" for the expedited processing request. Accordingly, this denial also lacks the "brief statement of *reasons* for the denial" mandated by the regulations as DOS does not address any of Plaintiff's four justifications for expedited processing nor explain why these four points fail to demonstrate a compelling need. *Id.*

63. Additionally, the State Department's Appeal Response and Denial also failed to provide an "estimate of the volume of any records or information withheld." *See* **Exhibit D**, Ref: A-2024-00548, Freedom of Information Act Appeal Response and Denial from State Department (dated August 14, 2024); *see also* 22 C.F.R. § 171.13(f).

64. Accordingly, as DOS failed to meet its statutory duties, the denial of Plaintiff's expedited processing FOIA request was unlawful under the regulations. *See* 22 C.F.R. § 171.13(d)-(f).

65. Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's FOIA request on an expedited basis.

66. The records sought by Shorelight's FOIA request relate to a matter of widespread and exceptional media interest in which there exits possible questions concerning the government's integrity and due process that affect public confidence, such that a compelling need exists and expedited processing is appropriate under and 22 C.F.R. § 171.11(f)(2) and (3).

67. DOS's failure to actually provide expedited processing under 22 C.F.R. § 171.11(f)(2) and (3) and their failure to provide the required content for their under 22 C.F.R. § 171.13(f) violates FOIA and DOS regulations.

68. Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's FOIA request.

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552
### Agency's Failure to Respond to FOIA Request Within 20 Days

69. Plaintiff repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70. By denying Plaintiff's request to expedite the processing of the information requested and by failing to provide any reason to support their denial, DOS has violated its statutorily mandated obligations under FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all reasonably segregable nonexempt information, and to not withhold responsive records. *See* 5 U.S.C. § 552(a)(6); *see also* 22 C.F.R. § 171.11(f).

71. Plaintiff is being irreparably harmed by DOS's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless DOS is compelled to comply with the FOIA.

# **RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

(1) order Defendant to grant the expedited processing of Shorelight's FOIA request submitted on August 1, 2024;

(2) order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to discovery of records responsive to Plaintiff's FOIA request;

(3) order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA request and a Vaughn index of any responsive records withheld under a claim of exemption;

(4) enjoin Defendant from continuing to withhold any and all nonexempt records responsive to Plaintiff's FOIA request;

(5) award Plaintiff attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) grant Plaintiff such other relief as the Court deems just and proper.

Dated: October 21, 2024                                                         Respectfully submitted,

/s/ Leon Fresco
LEON FRESCO
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 469-5129
Fax: (202) 955-5564
Email: leon.fresco@hklaw.com